UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80544-CIV-MARRA

MICHAEL DEPAOLI,

Plaintiff,

vs.

EXOTIC MOTORCARS AND
JEWELRY, INC.

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Exotic Motorcars and Jewelry, Inc.'s ("Defendant") Motion to Compel Arbitration and Dismiss the Complaint (DE 7 and 8), filed June 27, 2008, and Defendant's Motion to Stay Pending Decision on Arbitration (DE 17), filed July 31, 2008. The motions are fully briefed and ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Michael DePaoli ("Plaintiff") brings this five-count Complaint alleging breach of contract (count I), a violation of the Florida Deceptive and Unfair Trade Practices Act (count II), breach of implied warranty of merchantability (count III), breach of express warranty (count IV) and fraud in the inducement (count V). The facts giving rise to this Complaint stem from Plaintiff's purchase of a Ferrari automobile from Defendant. According to the Complaint, Plaintiff purchased the automobile for $160,000.00, but rejected it when Defendant failed to deliver the automobile as represented. (Compl. ¶ 9.) Despite Plaintiff's rejection, Defendant has

failed to pick up the automobile and return the $160,000.00 paid by Plaintiff. (Compl. ¶ 17.) Attached to Defendant's motion to dismiss is the retail buyers order ("RBO") entered into by the parties on January 31, 2008. (RBO, Ex. 1, attached to DE 7.)  The RBO states that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration . . . ." Id.  According to Plaintiff, the January 31, 2008 RBO mistakenly identified the automobile as a convertible with 5,200 miles whereas he intended to purchase a hard top with 4,613 miles. (Pl. Aff. ¶ ¶ 3, 7, attached to DE 10.)  Plaintiff also states that he advised Defendant of this error and sought to cancel the contract. (Pl. Aff. ¶ 9.)  Subsequently, according to Plaintiff, Defendant sent Plaintiff other RBOs, each of which Plaintiff rejected. (Pl. Aff. ¶ ¶ 10-12.)  At the time Defendant delivered the automobile, Plaintiff asserts that there was no written contract in force. (Pl. Aff. ¶ 14.)

In moving to compel arbitration and dismiss the complaint, Defendant argues that the arbitration clause encompasses each of the claims in the Complaint and that the strong public policy favoring arbitration requires that this case be dismissed. (DE 7 at 2-6.)  In response, Plaintiff states that there is no valid enforceable agreement to arbitrate because the RBO containing the arbitration clause was rescinded. (DE 10 at 3-6.)  According to Plaintiff, an arbitration clause does not survive rescission of an agreement. (DE 10 at 6-7.)  Lastly, Plaintiff contends that Defendant's request for dismissal is improper and that, assuming arguendo, there is a valid agreement to arbitrate, the matter should be stayed and not dismissed. (DE 10 at 8-9.)

II. Discussion

There is a strong federal policy supporting arbitration agreements.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  One of the purposes of the

Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. is to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]" by the courts. Id. at 221.

The FAA has created "a body of federal substantive law" which is applicable in both state and federal court. Southland Corp. v. Keating, 465 U.S. 1, 12 (1984); see also Goodman Ltd. Partnership v. THF Construction, Inc., 321 F.3d 1094, 1097 (11th Cir. 2003) (noting that the Florida Arbitration Code is substantially similar to the FAA). Moreover, the FAA guides the courts in enforcing arbitration agreements: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under an otherwise valid arbitration clause to seek an order from a court compelling arbitration. 9 U.S.C. § 4.

When ruling on a motion to compel arbitration under the Federal Arbitration Act, the Court must engage in a two-step inquiry: first, the Court must determine whether the parties agreed to arbitrate the dispute. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004). Then, the Court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp. v. Soler Chrisyler-Plymouth, 473 U.S. 614, 628 (1985). In making this determination, the Court must address the following: (1) is there in existence a valid, written agreement containing an arbitration clause; (2) does an arbitrable issue exist and (3) has the right to arbitration been waived. Seifert v. U.S.

Home Corp., 750 So. 2d 633, 636 (Fla. 1999); Alexander v. Minton, 855 So. 2d 94, 96 (Fla. Dist. Ct. App. 2003).

The dispute between the parties centers on whether a valid, written agreement containing an arbitration clause exists and it is that issue that the Court will therefore address. According to Plaintiff, the January 31, 2008 RBO was rescinded and therefore no written agreement to arbitrate exists. Under Florida law, rescission serves to void the contract. Leo v. MacLeod, 752 So. 2d 627, 629-30 (Fla. Dist. Ct. App. 1999). In other words, "[t]he effect of rescission is to render the contract abrogated and of no force and effect from the beginning." Borck v. Holewinski, 459 So .2d 405, 406 (Fla. Dist. Ct. App. 1984); see Bland v. Freightliner LLC, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002) (under Florida law, rescission is "the unmaking of a contract"); Diez-Sierra v. Aguera, 762 So. 2d 557, 558 (Fla. Dist. Ct. App. 2000) (when a contract is rescinded, the parties are left with no contract). The question presented is whether a controversy arising out of a contract containing an arbitration clause, which is alleged to have been rescinded, should be resolved before an arbitrator or a court.

To answer that question, the Court turns to the recent United States Supreme Court case Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). That case significantly narrowed the type of claims that a court may hear when faced with an arbitration clause. The Cardegna Court began by reaffirming that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445-46. Cardegna then extended that rule to challenges that would render the contract void or voidable and held that both of those challenges should be considered by an arbitrator as opposed to a court. Id. at 446-48. The Court did distinguish the issue of a contract's validity with the

issue of whether "any agreement between the alleged obligor and obligee was ever concluded" by noting that its holding did not apply to cases where the issue concerns "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal and whether the signor lacked the mental capacity to assent." Id. at 444 n.1 (internal citations omitted).

The Court finds that, under Cardegna, a challenge to a contract based on rescission belongs before an arbitrator because under Florida law rescission voids a contract. The narrow exception carved out in Cardegna does not apply here. The cases cited in Cardegna to explain the exception address challenges to signatory power or capacity as opposed to challenges to the enforceability of the contract. Id.; see Reynolds v. Credit Solutions, Inc., 541 F. Supp. 2d 1248, 1263 (N.D. Ala. 2008) (noting that Cardegna created a new category of challenge to an arbitration provision based on signatory power). Because a challenge based on rescission does not fall under the Cardegna exception, the controversy between the parties belongs before an arbitrator.

Nonetheless, in support of his argument that the motion to compel arbitration should be denied, Plaintiff points to Henderson v. Coral Springs Nissan, Inc., 757 So. 2d 577 (Fla. Dist. Ct. App. 2000). In Henderson, an automobile dealer rescinded a contract which contained an arbitration provision. Id. at 577-58. The Henderson court ruled that a rescinded contract is void, thus making the arbitration provision unenforceable. Id. This case, however, does not aid Plaintiff's position. Significantly, Henderson predates Cardegna and is likely no longer good law. Further, in Henderson, the parties did not dispute that the contract was rescinded. Here, Defendant does indeed dispute that rescission occurred. Clearly, then, whether this contract is

void is a preliminary issue that must be determined before this case can proceed to the merits. Thus, it is precisely the type of issue that an arbitrator must resolve.

In sum, after careful consideration of controlling law, the Court finds that Plaintiff is bound to arbitrate the claims presented in the Complaint. Therefore, the Court will grant the motion to compel arbitration.[1]

III. Conclusion

The Motion to Compel Arbitration (DE 7) is **GRANTED** and the Motion to Dismiss the Complaint (DE 8) is **DENIED**. Defendant's Motion to Stay Pending Decision on Arbitration (DE 17) is **DENIED AS MOOT**. The case shall be stayed pending the completion of the arbitration and the clerk shall administratively **CLOSE** the case. Plaintiff may re-open the case in the event the arbitrator finds that the contract was rescinded and no enforceable arbitration clause exists or to enforce an arbitration award that may be awarded in his favor. All remaining pending motions are **DENIED AS MOOT**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 15th day of September, 2008.

_____
KENNETH A. MARRA
United States District Judge

---

[1] Consistent with the terms of 9 U.S.C. § 3, the Court chooses to stay this action, as opposed to dismissing it, pending the resolution of the arbitration proceedings.